**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FREEDOM OF THE PRESS FOUNDATION
49 Flatbush Ave., Ste. 1017,
Brooklyn, NY 11217;

&

INTERCEPT MEDIA, INC.
15 W. 38th St, Unit 636, New York, NY 10018

*Plaintiff,*

v.

DEPARTMENT OF DEFENSE
1400 Defense Pentagon
Washington, DC 20301-1400

*Defendant.*

CIVIL ACTION NO. 26-4041

**COMPLAINT**

## PRELIMINARY STATEMENT

1. Plaintiffs Freedom of the Press Foundation ("FPF") and Intercept Media, Inc. ("The Intercept," and, collectively, "Plaintiffs") bring this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel the Department of Defense ("DOD" or "Defendant") to disclose documents requested pursuant to FOIA. Specifically, Plaintiffs seek documents related to a media "blacklist" previously described by DOD personnel and associated media policy and guidance materials relied on by DOD staff when engaging with members of the media.

2. Defendant has denied expedited processing of FPF's FOIA request and failed to respond to Plaintiffs' FOIA requests within the statutory deadline.

## Jurisdiction and Venue

3. This Court has jurisdiction over this action under 5 U.S.C. § 552(a)(4)(B). This Court also has federal question jurisdiction over this action under 28 U.S.C. § 1331.

4. This Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

5. This Court is a proper venue under 5 U.S.C. § 552(a)(4)(B) (providing for venue in FOIA cases where the plaintiff resides, or in the District of Columbia).

6. This Court has the authority to award reasonable costs and attorneys' fees under 5 U.S.C. § 552(a)(4)(E).

## Parties

1. Plaintiff, Freedom of the Press Foundation, is a national non-profit section 501(c)(3) organization dedicated to press freedom, government accountability, and the public's right to know. FPF regularly submits FOIA requests to gather information to educate the public about matters key to its mission, including government corruption and secrecy. The organization is incorporated under the laws of California. FPF also regularly publishes a newsletter which details updates and news related to its mission, including stories related to FOIA documents FPF obtains.

2. Among other public interest projects, FPF in 2023 announced the creation of the Daniel Ellsberg chair on government secrecy, a new position focusing on highlighting and fighting the many ways the government keeps secrets – from the press, the public, and congressional

overseers. In furtherance of this program, Lauren Harper, FPF's first Daniel Ellsberg Chair on Government Secrecy, submitted FPF's FOIA request in this matter.

7. Plaintiff, Intercept Media, Inc., is publisher of The INTERCEPT, and is a national non-profit organization whose mission is to educate the public through investigative journalism with a focus on environment, criminal justice, national security, and technology. The Intercept regularly covers the DOD, publishing news reporting on military policy and practice, including topics such as civilian harm and U.S. military casualties from the Iran War. The organization is incorporated under the laws of Delaware.

8. Defendant DOD is an agency of the United States under 5 U.S.C. § 552(f)(1).

9. Defendant is charged with the duty to provide public access to records in its possession consistent with the requirements of the FOIA. Defendant's refusal to provide Plaintiff with the records requested and Defendant's refusal to grant his request expedited processing are each a violation of FOIA.

## STATEMENT OF FACTS

### Facts Leading to Plaintiffs' FOIA Requests

10. Nick Turse, a full-time reporter and editor for The Intercept, is widely regarded as an investigative reporter and historian who has written in books and periodicals about American military policy and the domestic and overseas activities of DOD.

11. Turse has reported from the Middle East, Southeast Asia, and Africa. In addition to his regular contributions in The INTERCEPT, he has been published in the NEW YORK TIMES, the LOS ANGELES TIMES, HARPER'S MAGAZINE, VICE NEWS, YAHOO NEWS, TEEN VOGUE, the SAN FRANCISCO CHRONICLE, the NATION, and BBC.com, among other print and online publications. He has received a number of honors for his work including a Ridenhour Prize for Investigative

Reporting, a James Aronson Award for Social Justice Journalism, and an I.F. Stone "Izzy" Award for Outstanding Achievement in Independent Journalism. He was part of the investigative team at the INTERCEPT that won the 2016 New York Press Club Award for Special Event Reporting and the 2016 Online Journalism Association Award for Investigative Data Journalism for "The Drone Papers," won a 2022 Military Reporters & Editors Association Best Overseas Coverage award for The Intercept, and was a 2023 finalist for the American Society of Magazine Editors (ASME) National Magazine Awards for Reporting, also for The Intercept.

12. On July 21, 2026, Turse was reporting for The INTERCEPT about Iranian attacks on U.S. bases across the Middle East which are a part of U.S. Central Command ("CENTCOM" or "USCENTCOM"), one of the eleven unified combatant commands of DOD. He placed a phone call to the CENTCOM media office, which informed him nobody was available and placed him on hold for roughly two hours. After calling from a second phone to remind the office he was waiting on hold, he was connected to Maj. Emma Thompson, CENTCOM's media operations chief, who refused to answer several questions about the subject, and eventually hung up on him mid-sentence.[1]

13. Due to the urgency of the topic — the ongoing threat to American servicemembers — Turse was not deterred from trying to inform the public about the conflict and its possible escalation. He again called the media office. This time Richard Allee, an executive assistant at CENTCOM public affairs, answered the phone. Allee told Turse that he was calling excessively, and that if he did not stop inquiring about this story, Turse would "be put on a list of people to disregard."

---

[1] *See* Nick Turse, *Pentagon Spokesperson Admits There's a Secret Blacklist of Journalists*, THE INTERCEPT (Aug. 24, 2026), https://theintercept.com/2026/08/24/pentagon-military-journalist-blacklist-press-media/.

14. Turse asked for clarification: "You have a list of people to disregard?" Allee confirmed with an emphatic: "Yes."

15. Turse asked which reporters or outlets were currently on the list. Allee replied "I'm not privy to give you that information."

16. Turse asked if it was a secret list, and Allee stated "it's not a list that we publicize" before hanging up the phone.

17. Turse, aware of DOD's actions and statements against its perceived media enemies, described *supra* this section, emailed with additional questions about the journalists who have run afoul of the command. The agency replied "CENTCOM does not have a 'blacklist.'"

18. Under the prior Trump Administration, in November 2017, Turse had also been "blacklisted" by U.S. Africa Command (AFRICOM), another of DOD's combatant commands, after reporting on the torture of prisoners at a remote military base in Cameroon which was also used for U.S. drone surveillance.[2]

19. Turse reported on August 24, 2026, that he subsequently spoke with an unnamed U.S. official who informed Turse that "Hegseth's office had a standing order not to engage with [Turse] and would deny it if challenged."[3]

20. Based on his professional experience, knowledge of DOD's anti-media actions taken since January 2025, described *infra* ¶¶ 31-36, and interactions with CENTCOM in August 2026, Turse filed a FOIA request.

---

[2] See Nick Turse, *"We Don't Consider You a Legitimate Journalist" — How I Got Blacklisted by the Pentagon's Africa Command*, THE INTERCEPT (Jan. 13, 2018), https://theintercept.com/2018/01/13/we-dont-consider-you-a-legitimate-journalist-how-i-got-blacklisted-by-the-pentagons-africa-command/.

[3] Nick Turse, *Pentagon Spokesperson Admits There's a Secret Blacklist of Journalists*, THE INTERCEPT (Aug. 24, 2026), https://theintercept.com/2026/08/24/pentagon-military-journalist-blacklist-press-media/.

Plaintiff The Intercept's August 25, 2026 FOIA Request

21. On August 25, 2026, Turse filed a FOIA request in his capacity as an INTERCEPT reporter by email to the "CENTCOM Macdill AFB CENTCOM HQ Mailbox Freedom of Information Act" at centcom.macdill.centcom-hq.mbx.freedom-of-information-act@mail.mil.

22. His request sought, in relevant part:

> Pursuant to the federal Freedom of Information Act, 5 U.S.C. § 552, I request copies of lists of journalists that CENTCOM discriminates against or disregards.
>
> On July 21, 2026, Richard Allee, an executive assistant with CENTCOM public affairs told me that I might be added to "list of people to disregard" maintained by the CENTCOM press office. When asked for clarification – "You have a list of people to disregard?" – Allee further confirmed the existence of the list with an emphatic: "Yes." Allee went on to say that list is "not a list that we publicize."

23. Turse's request also sought news media fee status and requested an estimated date of completion as per 5 U.S.C. § 552(a)(7)(B)(ii).

24. As of the date of filing, CENTCOM has not acknowledged, responded to, or assigned an index number to Turse's FOIA August 25, 2026, FOIA request.

25. CENTCOM has subsequently acknowledged other requests submitted by Turse via the same means on other subject matter, e.g. USCENTCOM FOIA case #27-0027, requested on October 15, 2026, acknowledged two days later on October 17, 2026.

Plaintiff FPF's FOIA Request USCENTCOM FOIA case #26-0316.

26. Plaintiff FPF, aware of Turse's interaction with CENTCOM's media office, filed a FOIA request on August 26, 2026, by email to the "CENTCOM Macdill AFB CENTCOM HQ Mailbox Freedom of Information Act" at centcom.macdill.centcom-hq.mbx.freedom-of-information-act@mail.mil. Specifically, FPF requested:

> Pursuant to the Freedom of Information Act (FOIA), I hereby request disclosure of the following:

> Copies of all lists, spreadsheets, databases, or logs categorizing journalists or news organizations as "people to disregard" or "blacklist."
>
> All communications concerning discussions, proposals, or decisions to add, remove, or consider journalists or news organizations for inclusion on any such list cited above. This includes, but is not limited to, communications with or between contractors supporting the CENTCOM public affairs office.
>
> All written guidance, directives, instructions, or memorandums regarding how CENTCOM press office personnel should handle inquiries from journalists or outlets designated as "people to disregard."
>
> All records generated in response to, or discussing, Nick Turse’s August 24, 2026 Intercept article, "Pentagon Spokesperson Admits There’s a Secret Blacklist of Journalists.” This includes but is not limited to the preparations for the response issued by CENTCOM spokesperson Capt. Tim Hawkins, which called the article "a complete misrepresentation of exchanges that occurred" and accused Turse of having "repeatedly harassed CENTCOM staff who remained professional while expressing that his rude behavior was unacceptable."
>
> Please include in your search, but do not limit your search to, the records of 1) CENTCOM spokesperson Capt. Tim Hawkins, 2) CENTCOM public affairs office employee/contractor Richard Allee, and 3) CENTCOM chief of media operations Maj. Emma Thompson.
>
> The time frame for all components of this request is January 21, 2025, through the date this search is conducted.
>
> When processing this request, please note that on July 21, 2026, Richard Allee, an executive assistant in CENTCOM Public Affairs, explicitly informed journalist Nick Turse that he might be added to a "list of people to disregard" maintained by the CENTCOM press office.

27. FPF also requested news media fee status and expedited processing of its request “as a representative of the news media . . . [with] an urgency to inform the public concerning actual or alleged Federal Government activity at issue in this request.”

28. FPF’s FOIA request was acknowledged the following day, August 27, 2026, and assigned the tracking number USCENTCOM FOIA case #26-0316.

29. On September 3, 2026, CENTCOM denied FPF’s request for expedited processing.

30. To date, DOD has not provided documents in response to FPF's request. Nor has the agency provided any justification for failing to provide documents within FOIA's deadlines.

Related DOD Actions Blacklisting Other Media Outlets and Reporters

31. Plaintiffs' FOIA requests were filed despite CENTCOM's denial that such a blacklist exists due to a pattern of behavior by DOD and the White House to favor certain media outlets and exclude others from access to agency staff, information, and facilities. These disfavored, or "blacklisted" persons and outlets have been mocked and vilified in official departmental statements, physically restricted from communicating with departmental staff, and replaced by friendly social media influencers.

32. Secretary of Defense Pete Hegseth and other DOD officials have engendered a hostile relationship with American and international media outlets they perceive as opposed to the Administration. See New York Times Co. v. Dep't of Def., 824 F. Supp. 3d 27, 34 (D.D.C. 2026) (describing background of DOD media policies from parties' undisputed material facts). Specifically, "[b]efore and during Secretary Hegseth's confirmation process, news outlets . . . reported extensively on his background, including allegations of past sexual assault, excessive drinking, and marital infidelity, as well as questions about his lack of relevant experience. Throughout Secretary Hegseth's tenure, the Secretary and other Department officials have complained openly about reporting that they perceive as unfavorable to them and the Department." Id.

33. On January 31, 2025, DOD announced it was implementing an "annual media rotation program" for its in-house press corps, revoking office space assigned in the Pentagon from multiple outlets including NBC NEWS, the NEW YORK TIMES, NATIONAL PUBLIC RADIO and

POLITICO. The organizations learned of their eviction in a memo sent to the press corps attached to an email that stated "no additional information will be provided at this time."[4]

34. In May 2025, the Department issued a memorandum entitled "Updated Physical Control Measures for Press/Media Access Within the Pentagon," which prohibited journalists from being in the areas around the Secretary of Defense's office and stated that access to other sections of the building would require an official escort. That memorandum updated a policy for media access to the Pentagon that had existed since the early 2000s which provided limited access and dedicated physical workspace for news organizations so long as reporters confirmed their affiliations and completed a basic background check. See id., at 35-36 (describing policy).

35. Over September and October 2025, DOD further refined its updated media access policy, imposing new restrictions on access, grounds to revoke media credentials, and agreement to a set of rules prohibiting vaguely defined classes of questions. An ultimatum was issued to all outlets covering the Pentagon to sign the new rules. All of the outlets refused and returned their credentials. After this refusal, Chief Pentagon spokesperson Sean Parnell said in a statement that "This has caused reporters to have a full blown meltdown, crying victim online."[5]

36. On October 22, 2025, in a post on his official X account, Mr. Parnell announced the formation of a "next generation of the Pentagon press corps" made up of "new media outlets" which "circumvent the lies of the mainstream media and get real news to the American people." He further wrote that "their reach and impact collectively are far more effective and balanced than

---

[4] Amanda Terkel, *Pentagon removes major media outlets, including NBC News, from dedicated workstations in new 'rotation program'*, NBC News (Feb. 1, 2025), https://www.nbcnews.com/politics/donald-trump/pentagon-removes-major-media-outlets-nbc-news-dedicated-workstations-p-rcna190276.

[5] Helen Coster and Andrew Goudsward, *Pentagon journalists vacate workspace as new restrictions take effect*, Reuters (Oct. 16, 2025), https://www.reuters.com/business/media-telecom/pentagon-journalists-vacate-workspace-new-restrictions-take-effect-2025-10-15/.

the self-righteous media who chose to self-deport from the Pentagon" and referred to reporters who had refused to sign the new policy as "activists who masquerade as journalists." New York Times Co., 824 F. Supp. 3d, at 39.

## COUNT ONE: THE INTERCEPT'S AUGUST 25 REQUEST

***Violation of FOIA – Unlawful Withholding of Agency Records by Statutory Deadline***

37. Plaintiffs incorporate the allegations in the preceding paragraphs as though fully set forth herein.

38. FOIA requires federal agencies to respond to public requests for records, including files maintained electronically, to increase public understanding of the workings of government and to provide access to government information. FOIA reflects a "profound national commitment to ensuring an open Government" and agencies must "adopt a presumption in favor of disclosure." Presidential Mem., 74 Fed. Reg. 4683 (Jan. 21, 2009).

39. Agencies are required to make a determination on FOIA requests within 20 working days. 5 U.S.C. § 552(a)(6)(A).

40. Agencies may only extend this time period for an additional 10 working days in "unusual circumstances." 5 U.S.C. § 552(a)(6)(B)(i). FOIA also provides that upon request, agencies are to make records "promptly available." 5 U.S.C. § 552(a)(3)(A).

41. In its August 25, 2026, FOIA request, Plaintiff The Intercept properly sought records within the possession, custody, and control of Defendant.

42. Twenty working days from August 25, 2026, was Wednesday, September 23, 2026.[6]

43. Defendant DOD has, to date, failed to produce records responsive to Plaintiff's FOIA Request, provide an explanation of why responsive records cannot be produced because of

---

[6] Excluding four weekends and Labor Day on Monday, September 7, 2026.

exemptions outlined in 5 U.S.C. § 552(b), or otherwise make a responsive determination on Plaintiff's FOIA request.

44. Defendant DOD's failure to make a determination on or disclose the documents requested within the time frame mandated under FOIA is a denial and wrongful withholding of records in violation of 5 U.S.C. § 552.

45. Defendant DOD's conduct amounts to a denial of Plaintiff's FOIA request. Defendant is frustrating The Intercept's efforts to adequately understand and educate the public by reporting on how and whether the Department's broader efforts to restrict press access have trickled down to the press offices of combatant commands.

46. Administrative remedies are deemed exhausted when an agency fails to comply with the applicable time limits. 5 U.S.C. § 552(a)(6)(C)(i). Having exhausted administrative remedies for its August 25, 2026, FOIA request, The Intercept now turns to this Court to enforce the remedies and public access to agency records guaranteed by FOIA.

## COUNT TWO: FPF'S AUGUST 26, 2026, REQUEST #26-0316

### *Violation of FOIA – Unlawful Withholding of Agency Records by Statutory Deadline*

47. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

48. In its August 26, 2026, FOIA request indexed as USCENTCOM FOIA case #26-0316, Plaintiff FPF properly sought records within the possession, custody, and control of Defendant.

49. Twenty working days from August 26, 2026, was Thursday, September 24, 2026.[7]

50. Defendant DOD has, to date, failed to produce records responsive to Plaintiff's FOIA Request, provide an explanation of why responsive records cannot be produced because of

[7] Excluding four weekends and Labor Day on Monday, September 7, 2026.

exemptions outlined in 5 U.S.C. § 552(b), or otherwise make a responsive determination on Plaintiff's FOIA request.

51. Defendant DOD's failure to make a determination on or disclose the documents requested within the time frame mandated under FOIA is a denial and wrongful withholding of records in violation of 5 U.S.C. § 552.

52. Defendant DOD's conduct amounts to a denial of Plaintiff's FOIA request. Defendant is frustrating Plaintiff's efforts to adequately understand and educate the public by reporting on how and whether the Department's broader efforts to restrict press access have trickled down to the press offices of combatant commands.

53. Administrative remedies are deemed exhausted when an agency fails to comply with the applicable time limits. 5 U.S.C. § 552(a)(6)(C)(i). Having exhausted administrative remedies for its August 26, 2026, FOIA request #26-0316, FPF now turns to this Court to enforce the remedies and public access to agency records guaranteed by FOIA.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court:

i. Enter an order declaring that Defendant wrongfully withheld requested agency documents from Plaintiff FPF;

ii. Issue a permanent injunction directing Defendant to disclose to Plaintiff FPF all wrongfully withheld documents;

iii. Enter an order declaring that Defendant wrongfully withheld requested agency documents from Plaintiff The Intercept;

iv. Issue a permanent injunction directing Defendant to disclose to Plaintiff The Intercept all wrongfully withheld documents;

v. Maintain jurisdiction over this action until Defendant is in compliance with FOIA and every order of this Court;

vi. Award Plaintiffs attorney fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E); and

vii. Grant such additional and further relief to which Plaintiffs may be entitled.

Respectfully submitted on November 16, 2026.

s/ *Kevin H. Bell*________
Kevin H. Bell
DC Bar # 90015600
kevin@freeinformationgroup.com

Ginger McCall
DC Bar # 1001104
ginger@freeinformationgroup.com

Free Information Group, PLLC
1100 13th St. NW, Ste. 800
Washington, DC 20005
(202) 946-3642

*Attorneys for Plaintiff*